IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-02287-WDM-PAC

ALEXANDER GORKIN,

    Plaintiff,

v.

VINNELL CORPORATION,

    Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the motion for summary judgment filed by defendant Vinnell Corporation (Vinnell).[1]  I have reviewed the parties' written arguments and find oral argument is not required.  For the reasons that follow, the motion will be granted.

### Background[2]

Plaintiff Alexander Gorkin (Gorkin), who was born in Russia, was employed by Vinnell as a fingerprint technician from May 2001 until his termination in April 2003.  He alleges his termination was motivated by discrimination based on his national origin and on an unlawful retaliatory motive, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-1-2000e-17 (Title VII), and Colorado law.

---

    [1]    The motion was filed jointly with defendant Northrop Grumman Space & Mission Systems Corporation.  Northrop has since been dismissed from this case.

    [2]    The following facts are drawn from the parties' factual statements and, unless otherwise noted, appear to be undisputed.

For most of the period of his employment, Gorkin was supervised by Donald Biefnes. Biefnes instituted an "English only" policy and prohibited applicants and staff members from speaking Russian. He referred to Gorkin and at least one other employee of foreign origin in a derogatory manner on several occasions, although none of the remarks directed at Gorkin referred directly to his national origin.[3] Following the terrorist attacks on September 11, 2001, Biefnes posted a "Proud to be an American" flyer on a bulletin board in a break room; the flyer remained in place for approximately ten months before Biefnes was instructed to remove it.

On October 9, 2002, Biefnes gave Gorkin a verbal warning regarding Gorkin's violation of procedure by writing on an applicant's comment card and his actions in kicking and damaging a reception desk; the warning noted Gorkin's explanation that he was trying to repair the desk.

On October 16, 2002, Gorkin complained to a Vinnell project manager in Virginia via e-mail regarding Biefnes's discrimination against Russian-speaking applicants and employees, his action in prohibiting Gorkin from speaking Russian with Russian applicants, and his derogatory references to Gorkin. Gorkin sent similar complaints in October 2002 to the Colorado Division of Human Rights and to the Honorable Wayne Allard, United States Senator. Vinnell sent an employee from its Virginia office to investigate Gorkin's complaints; the investigation resulted in the removal of the "Proud to be an American" flyer from the break room bulletin board.

---

[3] Biefnes called Gorkin a "hemorrhoid," a "pain in the ass," and "an old fart." He referred to another employee as a "G– darn foreigner."

In November 2002, Gorkin complained to Biefnes and others of harassment and hostility, stating that a new employee had painfully fingerprinted him as part of a training exercise and that an acting site supervisor had counseled him for performing a quality assurance check on his own work. He also complained to a company vice-president of a hostile environment, reiterating his October 16 allegations to the Virginia project manager. On November 18, 2002, Gorkin filed charges of discrimination based on national origin and retaliation with the EEOC.

On November 26, 2002, R. J. Wooten assumed day-to-day oversight responsibilities for the Denver office where Gorkin was employed. Wooten and a human resources manager met with Denver staff, including with Gorkin and Biefnes. A memorandum from that meeting reflects that Wooten addressed the issue of the foreign language policy, Gorkin's working relationship with Biefnes, and comments of other employees about Gorkin.

Biefnes left Vinnell in December 2002; he was replaced as Gorkin's supervisor by the former acting on-site supervisor, Ms. Garcia.

In January 2003, Garcia reported to Wooten that Gorkin had violated company directives by using a palm pilot in the work area, that Gorkin used a massage device in the work area; that Gorkin argued with her about whether palm pilots were permitted; that Gorkin purposely took an applicant out of numerical service order, in violation of company procedure; and that Gorkin had corrected other staff members in front of applicants, in violation of procedure. On January 13, 2003, Wooten issued Gorkin a "Final Warning letter" discussing his use of the palm pilot and his use of hostile

3

language to Garcia.[4]

In February 2003, Wooten reminded Gorkin of his final warning letter after Gorkin again used a hand-held vibrating device to massage his shoulders in front of applicants and co-workers.

On April 2, 2003, Garcia informed Wooten that Gorkin had further violated company procedures by arguing with a technician, leaving materials unsecured, and leaving an applicant unattended near a computer workstation. Several days later, she reported him for using his cell phone in the operational area and for again leaving an applicant unattended at a workstation.

Wooten terminated Gorkin's employment on April 11, 2003.

After exhausting his administrative remedies, Gorkin brought this lawsuit, asserting claims for (1) national origin discrimination and retaliation in violation of Title VII, (2) promissory estoppel, (3) breach of the express covenant of good faith and fair dealing, and (4) wrongful discharge in violation of public policy.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

---

[4] Garcia reported to Wooten that Gorkin had said, "This is a bunch of f—ing bull—." Gorkin admits the report was made but denies that he addressed Garcia in vulgar or hostile language.

it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence. In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-804.

Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection." *Id*. at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226

(quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000). The plaintiff must show pretext by demonstrating that the defendant was more likely motivated by a discriminatory reason or that the defendant's proffered reason "is unworthy of credence." *Id.* (quotation omitted). *See also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

## Discussion

1. <u>Title VII National Origin Discrimination</u>

To establish a *prima facie* case on his national origin discrimination claim, Gorkin must show: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was terminated; and (4) the position was not filled after his termination or other conditions exist that give rise to an inference of discrimination. *Plotke v. White*, 405 F.3d 1092, 1099-1100, 1101 (10th Cir. 2005). Although it is arguable whether Gorkin has provided proof of the fourth element, for purposes of this order I will assume Gorkin can meet these burdens.

Vinnell has presented nondiscriminatory reasons for Gorkin's termination, including making embarrassing comments to other staff, taking an applicant out of numerical

6

sequence, and leaving an applicant unattended at a work station.  Gorkin contends these reasons were merely a pretext for discrimination, alleging that Vinnell's supervisors displayed an "openly hostile attitude towards Russians" in the workplace.  Response, at 11.  He points to the "Proud to be an American" flyer posted on a bulletin board after September 11, 2001, the lack of discipline to Biefnes for posting the flyer, hostile remarks by Biefnes regarding Russian-speaking employees and immigrants, and the equivocal "retraction" of the English as a primary language policy.

The Tenth Circuit requires that a plaintiff provide proof of discriminatory actions or remarks by the supervisor making the adverse employment decision.  *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (discriminatory comments by non-decisionmakers are not material in demonstrating that employer's action was based on discrimination).  Here, Gorkin has not disputed that Wooten, the Central Region Manager of Vinnell, made the decision to terminate him.  In his response to the motion for summary judgment, however, he does not allege any statements or actions by Wooten that could give rise to a finding of pretext.  Although Gorkin asserts that Biefnes was a "tool" of Michael Beach, who remained at the company after Biefnes left, Gorkin does not tie either man or his alleged actions to Wooten.

Because Gorkin may well have failed to establish a *prima facie* case and in any case has provided no evidence suggesting that Wooten acted with discriminatory animus, Vinnell is entitled to summary judgment on this claim.

2.   Title VII Retaliation

Gorkin's claim of retaliation under Title VII requires that he demonstrate: (1) he

engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Trujillo v. Univ. of Colorado Health Sciences Center*, 157 F.3d 1211, 1215 (10th Cir. 1998). The parties focus on the third element, and particularly whether there is sufficient temporal proximity between Gorkin's complaints and his termination in April 2003.

Gorkin relies primarily on the following protected activities to support his retaliation claim:

* Mid-October 2002: a letter to Senator Wayne Allard's office and the Colorado Civil Rights Division complaining of harassment and discrimination based on national origin; and

* November 18, 2002: a complaint filed with the EEOC charging discrimination based on national origin.

He alleges that Vinnell began to take disciplinary actions against him immediately following these complaints, although he acknowledges that an October 9, 2002 verbal warning predated his letter to Senator Allard's office. He contends that the onset of these actions, culminating in the April 2003 termination, demonstrate the required causal connection.

Even assuming Gorkin can establish a *prima facie* case, he cannot show that Vinnell's reasons for his termination were a pretext for retaliation. To show pretext, he may produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy or credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1305 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d

1319, 1323 (10th Cir. 1997) (further sources omitted)).

Gorkin admits that Garcia reported to Wooten that Gorkin violated company policies by purposely taking an applicant out of numerical service order, correcting other staff members, and leaving an applicant unattended at a work station. [5] Wooten was also informed that Gorkin was rude to Garcia. Although Gorkin denies that he was rude to Garcia, he has not shown that Garcia did not perceive his conduct as rudeness, that Wooten did not believe Garcia's reports, or that his belief in their correctness was not reasonable. In the absence of any evidence of pretext, summary judgment is appropriate for Vinnell on this claim as well.

3.    Promissory Estoppel

Gorkin claims that Vinnell made statements in writing that constitute binding promises and that he was terminated in breach of those promises. To prevail on this claim, Gorkin must demonstrate:  (1) Vinnell should reasonably have expected him to consider the promises as a commitment from it to follow its statements; (2) he reasonably relied on the statements to his detriment; and (3) injustice can be avoided only by enforcement of the promises. *Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 433 (10th Cir. 1996) (quoting *Adams County School Dist. No. 50 v. Dickey*, 791 P.2d 688, 693 (Colo. 1990)).

Among the promises made by Vinnell are statements to the effect that the company used only "valid, job-related requirements for hiring, promotion and assignment" and that

---

[5] Garcia also reported that Gorkin used a palm pilot in violation of company policies. Gorkin denies that such activity was against procedure. Even omitting this complaint, other grounds remained for his termination.

9

personnel decisions such as compensation and discipline would be "administered in compliance with" federal and state laws. Response, at 17. These statements are simply descriptions of Vinnell's policies and are not sufficient to create enforceable promises. *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997). In addition, I note that an employer's promise to abide by governing laws is illusory because the employer is required to follow the laws whether it promises to do so or not.

Accordingly, summary judgment is appropriate for Vinnell on the promissory estoppel claim.

4.      Breach of Duty of Good Faith and Fair Dealing

Because Gorkin relies on the same promises discussed above for his claim that his termination was in breach of the covenant of good faith and fair dealing, Vinnell is entitled to summary judgment on this claim for the reasons set forth above.

5.      Wrongful Discharge in Violation of Public Policy

Gorkin's final claim is that his termination violated public policy because Vinnell failed to comply with state statutes prohibiting discrimination on the basis of national origin. This court has held in similar circumstances that a claim of wrongful discharge is not available where a statute, such as Title VII, provides the employee with a remedy. *See, e.g., Caspar v. Lucent Technologies, Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003). Because such is the case here, summary judgment is appropriate for Vinnell on this claim.

Case 1:03-cv-02287-WDM-PAC   Document 90   Filed 03/02/06   USDC Colorado   Page 11 of 11

Accordingly, it is ordered that the motion for summary judgment filed by Vinnell on March 1, 2005, is granted and this case is dismissed with prejudice.

DATED at Denver, Colorado, on March 2, 2006.

BY THE COURT:

s/ Walker D. Miller
United States District Judge